**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

DEC 30 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

BETH ANN BROYLES,

           **Petitioner,**

v.

                                  **Criminal Case No.  2:09cr3**
                                  **Civil Case No. 2:11cv496**

**UNITED STATES OF AMERICA,**

           **Respondent.**

## OPINION AND ORDER

This matter is before the Court on Petitioner Beth Ann Broyles' ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. Petitioner asserts that her conviction should be vacated because her counsel was ineffective, the Government committed prosecutorial misconduct, and she is actually innocent of the crime of which she was convicted. The Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief sought in her § 2255 motion. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2009, pursuant to a written plea agreement, Petitioner pled guilty to Count One of the Second Superseding Indictment in this case.   Count One charged Petitioner with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371.   According to the Statement of Facts ("SOF"), Petitioner drafted and submitted to the United States seasonal temporary worker H2B visa petitions containing "material misrepresentations," which "render[ed] the overall application fraudulent."   Statement of Facts ¶¶ 3-4, ECF No. 628.   The SOF also indicates that, although Petitioner did not know "she was being hired to do anything fraudulent," she received information over the course of the conspiracy that caused her to become "suspicious that the . . . data was false" and, based on the circumstances, she "should have known . . . and should have recognized that [her co-defendant] was obviously lying to her."   Id. ¶ 4.   Pursuant to the plea agreement, the Government agreed to dismiss the remaining counts of the indictment against Petitioner, which included six counts of visa/asylum fraud, in violation of 18 U.S.C. § 1546(a).   Plea Agreement ¶ 9, ECF No. 627.

On January 25, 2010, Petitioner appeared before the Court with counsel for sentencing.   Petitioner was sentenced to eight months of imprisonment on Count One, beginning on February 25,

2010.  On February 5, 2010, Petitioner filed a Notice of Appeal, ECF No. 780, and a Motion for Delayed Reporting to Marshal's Custody, based, in part, on her desire "to review the transcripts of the [sentencing] hearing with her new attorney before deciding to continue with an appeal or withdraw the appeal," ECF No. 778 at 2.  Petitioner's Motion for Delayed Reporting was denied on February 12, 2010.  On February 16, 2010, Petitioner filed a Motion to Stay Pending Appeal, ECF No. 796, which was also denied.  Petitioner reported to the U.S. Marshal on February 25, 2010.  On June 16, 2010, the Fourth Circuit denied Petitioner's motion for release pending appeal. ECF No. 823.  On September 28, 2010, the Fourth Circuit granted Petitioner's motion to dismiss her appeal.  ECF No. 835.

Petitioner filed her § 2255 motion and supporting memorandum on September 2, 2011.  ECF No. 854.  On October 5, 2011, the Court directed the Government to file a response within 60 days.  The Government filed its response on December 14, 2011.  ECF No. 871.  Petitioner filed her reply brief on January 4, 2012.  ECF No. 873.  On May 30, 2012, Petitioner filed a motion to amend her § 2255 motion, in light of an opinion issued by the United States Supreme Court, Global-Tech Appliances, Inc. v. SEB SA, 131 S. Ct. 2060 (2011), which Petitioner alleged "create[d] a new substantive rule" regarding "willful blindness."  ECF No. 878.  This Court denied

Petitioner's motion to amend on January 23, 2013, observing that the Supreme Court did not state a new substantive rule for willful blindness, but rather affirmed the approaches taken by all Circuit Courts of Appeal, including the Fourth Circuit. This matter is now ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack her sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. To obtain such relief, a petitioner bears the burden of proving that her sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

4

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a

petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim, or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, she must show that errors "worked to [her] actual and substantial disadvantage, infecting [her] entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623-24 (1998); see Mikalajunas, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner

6

"asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "A federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th

Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for [her] defence." U.S. Const. amend. VI.   The Supreme Court of the United States has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added).  To obtain relief based on an allegation of ineffective assistance a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice.   Id. at 687-88.   "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test.   United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard).

To establish constitutionally deficient performance, a petitioner must demonstrate that [her] lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. If defense counsel has made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will

seldom if ever be found wanting." Id. at 681 (internal quotation marks omitted). Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks"—such strategic decisions must be afforded "'enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of

the test.   United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner's § 2255 motion advances three claims.   First, Petitioner alleges that she is "actually innocent because she did not have knowledge that the petitions contained material misrepresentations nor was she willfully blind of that fact." Pet'r's Br. at 24, ECF No. 854.    Second,  Petitioner  asserts that her counsel was ineffective because he "failed to make a reasonably  diligent  inquiry"  into  the  facts  and  law  of Petitioner's case.   Id. at 49, 50.   Third, Petitioner alleges prosecutorial misconduct by the Government, claiming that the prosecutor  made  "false  statements  which  prejudiced [Petitioner]."   Id. at 58.

As a preliminary matter, the Court observes that neither the United States Supreme Court nor the Fourth Circuit has recognized "a  freestanding  actual  innocence  claim"  as  an independent ground for habeas relief.   McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)); cf. House v. Bell, 547 U.S. 518, 554-55 (2006) (observing  that,  although  the  question  was  "left  open  in Herrera" whether "freestanding innocence claims are possible," "the  threshold  for  any  hypothetical  freestanding  innocence claim" would be "'extraordinarily high'" (quoting Herrera, 506

U.S. at 417)).  This is because actual innocence "is not itself a constitutional claim, but [is] instead a gateway through which a habeas petitioner must pass to have [her] otherwise barred constitutional claim considered on the merits."  Herrera, 506 U.S. at 404.  "In other words, although a petitioner claims actual innocence . . . , this innocence claim 'does not by itself provide a basis for relief.  Instead, [Petitioner's] claim for relief relies critically on the validity' of [her] procedurally defaulted claims."  Teleguz v. Pearson, 689 F.3d 322, 328 (4th Cir. 2012) (quoting Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010)).  Accordingly, this Court will consider Petitioner's actual innocence claim only as a potential excuse for the procedural default of her constitutional claims. See Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2003) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003)).

### A. Ineffective Assistance of Counsel

### i. Failure to Investigate

The Court first addresses Petitioner's single "nondefaulted claim[]," Haley, 541 U.S. at 394, which asserts that her counsel rendered ineffective assistance "because he failed to make a reasonably diligent inquiry into the facts surrounding [her] case" and because he "also failed to investigate the law," Pet'r's Br. at 49, ECF No. 854.  Petitioner asserts that, had

her counsel "performed a minimal amount of factual or legal research, he would have determined that [Petitioner] was not guilty of any of the charged crimes" because she lacked "actual knowledge or the equivalent willful blindness," which was necessary to prove the "element of knowledge." Id. at 49-50. This Court need not determine whether Petitioner's "counsel's performance fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, because Petitioner cannot "affirmatively prove prejudice" from counsel's alleged errors, id. at 693.[1]

A defendant's guilty knowledge may be established by a "show[ing] that a defendant actually was aware of a particular fact or circumstance, or that the defendant knew of a high probability that a fact or circumstance existed and deliberately sought to avoid confirming that suspicion." United States v. Poole, 640 F.3d 114, 121 (4th Cir. 2011). "Under this second method of proof, . . . evidence establishing a defendant's

---

[1] The Court acknowledges that the prosecutor misinformed the Court as to the willful blindness standard when he stated that "[i]t's not a subjective person standard . . . , it is a reasonable person's standard." Plea Hr'g Tr. at 6. Petitioner's counsel did not correct the prosecutor's error, but acknowledged instead that Petitioner "had information which would have prompted a reasonable person to investigate further and would have caused her to know that what she was doing was illegal." Id. at 12. However, any error in communicating the standard to the Court was harmless because the Petitioner's own testimony at the plea hearing, discussed infra at p. 14-16, established that she "actually was aware of a particular fact or circumstance . . . and deliberately sought to avoid confirming [her] suspicion." United States v. Poole, 640 F.3d 114, 121 (4th Cir. 2011) (observing that "a defendant's 'willful blindness' constitutes proof of his subjective state of mind").

'willful blindness' constitutes proof of his subjective state of mind, thereby satisfying the scienter requirement of knowledge." Id.  "[G]uilty knowledge" may not be inferred "from a mere showing of careless disregard or mistake."  United States v. Guay, 108 F.3d 545, 551 (4th Cir. 1997).  However, willful blindness may be proven where a defendant "purposely clos[es her] eyes to avoid knowing what was taking place around [her]," United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991), or "ignore[s] warning signs" that would otherwise indicate the unlawfulness of the activity in question, United States v. Ali, Nos. 12-4630, et al., 2013 U.S. App. LEXIS 22963, at *16 (Nov. 14, 2013).

At Petitioner's guilty plea hearing, the Court and both counsel discussed the willful blindness doctrine in great detail.  At the beginning of the hearing, the Court indicated its initial concern in proceeding with Petitioner's guilty plea, "based on the paperwork," and requested "some more representations" regarding Petitioner's "willful blindness." Plea Hr'g Tr. at 7.  After Special Agent Gray testified regarding his interviews of Petitioner, the Court indicated its lingering concerns, but agreed to hear from Petitioner regarding "the elements" of the offense.  Id. at 27.

Petitioner testified that, "in December of 2008," she filed a petition for some of the alien workers, but inadvertently "put

the wrong fee amount on the check." Id. at 46, 49. Petitioner went on to explain that, in the meantime, she had developed "some doubts as to the validity or the truthfulness of the information [co-defendant Pochtaruk] provided," and testified that she received "a lot of conflicting information" regarding "important factual contradictions concerning where, when and how" the alien workers would be working. Id. at 46-47. Petitioner admitted that she "had numerous reasons to be suspicious of [her co-defendant Pochtaruk]." Id. at 46. Petitioner then explained that, approximately "two or three weeks" after she filed the petition, id. at 49, the petition was returned to Petitioner, presumably because of the incorrect fee. At that point, Petitioner testified, "it all started to come together" that Pochtaruk "was using these workers to go work for another company." Id. at 50. However, when Petitioner received the returned petition, she "panicked" and "refiled" it. Id. Petitioner explained that she "had a conundrum." Id. at 51. She knew that, if she did not refile the petition, the aliens "would have been illegal, but if [she] did file it then [she] was probably breaking the law." Id. at 50-51. Petitioner testified that, although she "didn't know exactly what was going on," she "actually knew that there was something wrong," and, despite the fact that she "was very suspicious," she "filed [the petition] anyway." Id. at 51 (emphasis added). From

15

Petitioner's own testimony, it is clear that, even if Petitioner's counsel misinformed her as to the definition of willful blindness, her conduct demonstrates, at the very least, willful blindness. She "knew of a high probability" that the petition contained false information, Poole, 640 F.3d at 121, yet, "ignor[ing] warning signs" regarding the petition's validity, Ali, 2013 U.S. App. LEXIS 22963, at *6, she "filed it anyway," Plea Hr'g Tr. at 51. Nothing in the record suggests that Petitioner's conduct was a result of mere "careless disregard or mistake." Guay, 108 F.3d at 551. Therefore, because Petitioner's own testimony established her willful blindness, Petitioner fails to demonstrate "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### ii. Failure to Submit Letters on Petitioner's Behalf

Petitioner also alleges that her counsel failed to submit to the Court two letters from her "colleagues," as well as a copy of a letter Petitioner had written to the Attorney Registration and Disciplinary Commission. Pet'r's Br. at 54, ECF No. 854. Petitioner's counsel submitted fifteen letters from Petitioner's family, friends, and colleagues on her behalf, as well as a ten-page letter from Petitioner herself. At Petitioner's sentencing hearing, the Court suggested that

counsel had submitted more letters than were necessary to adequately address Petitioner and her situation. See Sentencing Hr'g Tr. at 3. Petitioner's counsel apologized and stated that there were even more letters that he chose not to submit because he "thought [he] already submitted too many." Id. at 45. The Court sees no error by counsel in making the conscious strategic decision to refrain from sending to the Court all of the letters it received on Petitioner's behalf.

The Court has reviewed both of the letters from Petitioner's colleagues that Petitioner complains her counsel improperly failed to submit. The first letter, from Alex Zaretsky, was described by Petitioner to her counsel as "a bit confrontational," Pet'r's Email to Counsel at 2, ECF No. 854-29, and the Court understands why counsel did not submit this letter to the Court. Although, like many of the letters, Zaretsky's letter described Petitioner as "trusting" and "non-judgmental," it also described her as "too trusting, even gullible," and opined that those traits have "led to some negative consequences." Zaretsky Letter at 4, ECF No. 854-29. Zaretsky also described events occurring "[s]hortly after [Zaretsky's] departure" from Petitioner's law office, where a recruiter contacted Petitioner to "complain about Ms. Pochtaruk." Id. at 3. Although Petitioner was "confronted with allegations from [the] recruiter," Petitioner "placed too much trust in her

former client and friend [Pochtaruk]." Id. at 4. The Court agrees with counsel's decision not to submit Zaretsky's letter, as it was not as complimentary as the other letters counsel submitted to the Court and it presented no additional information that would have necessitated a different outcome.

The second letter, from David Chen, was submitted to the Court in a slightly modified form from the one Petitioner expected her counsel to submit. The omitted portion of Chen's letter contained Chen's own opinion regarding the practice of immigration law and potential punishment of attorneys who do not "question their clients more closely and second guess their word." Chen Letter at 8, ECF No. 854-29. The Court finds no error by counsel in submitting the modified letter, which elaborated on Petitioner's positive character traits rather than Chen's own editorial on immigration law practice and his opinion that Petitioner's situation was not "so egregious as to merit harsh penalties." Id. at 9.

The Court has also reviewed Petitioner's letter to the Attorney Registration and Disciplinary Commission ("ARDC"). Pet'r's Letter to ARDC, ECF No. 854-27. In her letter, Petitioner explained the circumstances leading to her conviction, recounted events that transpired at her plea hearing, and described her mental condition and treatment. Id. The content of Petitioner's letter to the ADRC was much the same

as her letter to the Court, which the Court indicated it had reviewed before the sentencing hearing.  See Sentencing Hr'g Tr. at 4.   The Court sees no error in counsel's decision not to submit to the Court Petitioner's letter to the ADRC, as it presented no additional information that would have changed the Court's ruling.

### iii. Failure to Argue Mitigating Facts at Sentencing

Petitioner also argues that her counsel "failed to argue [certain] mitigating facts at the sentencing hearing," including her claim "that she continued to investigate after filing the petition and would have had an opportunity to withdraw the petition," and that she believed "she had to choose between the lesser of two harms," either "criminal wrongdoing" or "an ethics violation."  Pet'r's Br. at 51, 54, ECF No. 854.  Petitioner adequately presented the "lesser of two harms" argument herself when she testified at her plea hearing regarding her "conundrum," stating that, if she did not file the petition, the aliens "would have been illegal, but if [she] did file it then [she] was probably breaking the law."  Plea Hr'g Tr. at 50-51. Furthermore, her counsel presented this argument in his position paper, which was submitted to the Court before sentencing.  See Steinback's Br. at 11, ECF No. 759 (stating that, "in a panicked state [Petitioner] tried to balance the competing harms, and

ultimately decided that she should file the petitions in order to rectify the harm she believed she had already caused").

The Court also notes that counsel presented a great deal of mitigating evidence on Petitioner's behalf, which is best reflected in Petitioner's sentence of eight months – well below the Guidelines range of 30 to 37 months. Because Petitioner has shown neither error by counsel nor any prejudice due to the alleged errors of counsel, Petitioner's claim of ineffective assistance of counsel must fail.

## B. Prosecutorial Misconduct

Petitioner assigns error to two statements made by the prosecutor at her sentencing hearing and alleges that, absent the remarks, there is nothing that proves [her] guilt." Pet'r's Br. at 60, ECF No. 854. First, Petitioner points to the prosecutor's statement, "The defendant's first conversation with agents, she said she knew the petitions were fraudulent," and alleges that the prosecutor's statement was "a false statement." Id. Second, Petitioner asserts that "[t]he Government made an improper statement when it alleged that [Petitioner] confessed again to knowing the petitions were fraudulent to the probation officer during the PSR interview." Id.

### i. Procedural Default

Petitioner failed to assert her prosecutorial misconduct claim on direct appeal, but argues that her claim is not

procedurally defaulted because it "could not have been made on appeal." Pet'r's Reply at 8, ECF No. 873.  Petitioner contends that the "procedural default rule applies to claims which, 'can be fully and completely addressed on direct review based on the record.'"  Id. at 7-8 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998).  Because "none of [her] claims could have been made without further factual development," Petitioner argues, she "could not have raised her claims on direct appeal." Id. at 8, ECF No. 873.[2]

The Supreme Court suggested in Bousley that the "exception to the procedural default rule for claims that could not be presented without further factual development" is limited to the situation where "a plea of guilty had been coerced by threats made by a Government agent, when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'"  Bousley, 523 U.S. at 621-22 (quoting Waley v. Johnston, 316 U.S. 101, 104 (1942)).  As in Bousley, "Petitioner's claim . . . differs significantly from that advanced in Waley," and her claim could have been "fully and completely addressed on direct review based on the record."

---

[2] Petitioner does not explain why her prosecutorial misconduct claim could not be addressed on direct appeal, except that it required further factual development.  The Court presumes Petitioner believed it necessary for the appellate court to compare the prosecutor's statements to the transcripts of her statements to the federal agents and probation officer, as well as the emails between Petitioner and Pochtaruk, all of which were not submitted to the Court at Petitioner's plea hearing or at sentencing.

Id. at 622.   Furthermore, if Petitioner had raised her claim on direct appeal, the appellate court, like this Court, would have determined that her claim was without merit because neither were the prosecutor's statements improper nor did they have any "effect on the judgment."   Id.

First, the Court observes that the presentence report – which Petitioner affirmed was correct at her sentencing hearing, except for "some minor errors," Sentencing Hr'g Tr. at 5, – contained both of the prosecutor's statements of which Petitioner now complains.   Paragraph 116 of the presentence report, entitled "Acceptance of Responsibility," states the following:

> The defendant freely admitted her guilt in court at the time of her plea. **During her interview with the probation officer, the defendant admits that she submitted H2B petitions that contained material misrepresentations, rendering the overall application fraudulent.**   Broyles admits that she counseled Pochtaruk and another co-conspirator on how to create payroll data to demonstrate that the company had a peak need. . . .   **The defendant further admits that she spoke with the investigator to advise that she was certain the applications were fraudulent,** and that she should have known they were fraudulent when the application were [sic] filed.   Broyles states that she was suspicious of the conduct and she advises that she should have properly investigated the conduct.   The defendant reports that she is "heartbroken" because her conduct was being used to exploit the immigrants. Broyles states that she felt entirely responsible for the exploitation of the immigrants and had contemplated suicide because of her actions.   The defendant adds that she does not believe that she had the proper judgment to practice law.   The defendant

has demonstrated acceptance of personal responsibility for her criminal conduct.

Presentence Report at ¶ 116 (emphasis added).[3]  In addition, the Statement of Facts - which Petitioner signed and affirmed to the Court was "true and correct," Plea Hr'g Tr. at 44, - also contained the statement that Petitioner "was certain that the applications were fraudulent."  Statement of Facts ¶ 11, ECF No. 628.  An appellate court, comparing the prosecutor's statements at sentencing to the statements contained in the presentence report and statement of facts, likely would have determined that the prosecutor's statements were not improper because Petitioner herself had affirmed to the Court that the statements were true.

Second, the appellate court could have determined that, based on the record before it, any harm resulting from the prosecutor's statements was harmless.  Petitioner alleges that "the Court may have relied on [the prosecutor's] erroneous remarks in determining a factual basis" for Petitioner's guilt, and thus improperly "establish[ed] the factual basis _after_ entering [Petitioner's] plea."  Pet'r's Br. at 59, 60, ECF No. 854.  The record, however, indicates to the contrary.  After considering Petitioner's testimony that she "_actually_ _knew_ that

_____

[3] In support of her § 2255 motion, Petitioner submitted to the Court an email she had sent to her counsel regarding her objections "to each paragraph of the PSR that indicated she had actual knowledge the petitions were fraudulent."  Pet'r's Br. at 61, ECF No. 854.  In that email, however, Petitioner indicated no objections to paragraph 116 of the presentence report.  See ECF No. 854-28.

there was something wrong" with the petition and, despite the fact that she "was very suspicious," she "filed [the petition] anyway." Plea Hr'g Tr. at 51, the Court found that Petitioner's "plea [was] supported by an independent basis in fact for each of the essential elements of the offense" and "accept[ed] the plea agreement between the United States and [Petitioner]," id. at 53. The Court then accepted Petitioner's guilty plea and found her "guilty as to Count 1." Id.

At Petitioner's sentencing hearing, the Court confirmed that it had "accepted the guilty plea" at the plea hearing and had merely "continued [the matter] for sentencing." Sentencing Hr'g Tr. at 3. The Court then considered counsel's argument and Petitioner's testimony in order to "weigh[] the various factors and determin[e] the appropriate sentence." Id. at 28. Thus, the Court clearly did not "determine that the knowledge element was satisfied because it relied on the Government's statements" after Petitioner's plea hearing, Pet'r's Br. at 59, ECF No. 854, because it had already found "an independent basis in fact for each of the essential elements of the offense" at her plea hearing, Plea Hr'g Tr. at 53. Accordingly, because an appellate court could have "fully and completely addressed [Petitioner's claim] on direct review based on the record,'" Pet'r's Reply at 7-8, ECF No. 873 (quoting Bousley, 523 U.S. at 622),

Petitioner's failure to raise the claim on direct appeal does not excuse her procedural default.[4]

## C. Actual Innocence

As discussed above, Petitioner's actual innocence claim serves only to excuse the procedural default of her constitutional claims, and her § 2255 "'claim for relief relies critically on the validity' of [her] procedurally defaulted claims." Teleguz, 689 F.3d at 328 (quoting Coleman, 628 F.3d at 318). Therefore, even if Petitioner succeeds on her actual innocence claim, it will only allow this Court to consider her procedurally defaulted claim of prosecutorial misconduct. And, as indicated above, Petitioner's claim asserting prosecutorial misconduct lacks merit, both because she fails to prove that the prosecutor's statements were improper and because the prosecutor's statements, which were made at sentencing - after the Court had already found a factual basis for Petitioner's guilt - did not "prejudice[ Petitioner] and cause[] the Court to enter a felony conviction against her." Pet'r's Br. at 61-62,

---

[4] Petitioner also argues "there are explicit exceptions to the procedural default rule for claims of actual innocence and prosecutorial misconduct." ECF No. 873 at 9 (citing Banks v. Dretke, 540 U.S. 668 (2004), as "holding that claims of prosecutorial misconduct cannot easily be defaulted.") However, the Court does not interpret the holding of Banks as creating an "explicit exception[]" for a claim of prosecutorial misconduct. Banks involved a capital defendant and "significant exculpatory or impeaching material in the State's possession." Id. As Petitioner points out, "the procedural history of Banks is unique." ECF No. 873 at 9. Therefore, Petitioner's argument fails to persuade the Court that her procedural default is excused.

ECF No. 854.

Furthermore, in order to succeed on her actual innocence claim, Petitioner must also demonstrate her innocence of any "more serious charges" that the Government forewent as a result of the plea negotiations. See Bousley, 523 U.S. at 624 ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."). The six counts of visa/asylum fraud, in violation of 18 U.S.C. § 1546(a), are "more serious" than Petitioner's charge for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.[5] A violation of 18 U.S.C. § 1546(a) carries a maximum penalty of ten years for a first or second offense, while a violation of 18 U.S.C. § 371 carries a maximum of only five years. Neither statute prescribes a minimum penalty. See, e.g., United States v. Caso, 723 F.3d 215, 221 n.2 (D.C. Cir. 2013). Thus, because the Government dismissed "more serious charges" against Petitioner, she must prove her actual innocence of both charges to succeed on her actual innocence claim, which she cannot do.

18 U.S.C. 1546(a) provides, in pertinent part:

---

[5] The seriousness of the charges foregone may be measured by "the maximum statutory sentence provided by Congress," the "maximum sentence that particular defendant would have received . . . under the Federal Sentencing Guidelines," or "both the statutory minimum and the statutory maximum." Brian R. Means, Federal Habeas Manual § 9B:85, at 930-31 (2013 ed.).

Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, **knowingly subscribes as true, any false statement with respect to a material fact in any application,** affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or **knowingly presents any such application, affidavit, or other document which contains any such false statement** or which fails to contain any reasonable basis in law or fact--

Shall be fined under this title or imprisoned not more than . . . 10 years (in the case of the first or second such offense , if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), . . . or both.

By her own testimony, Petitioner established her guilt of visa/asylum fraud. She testified that she "file[d] what is known as a I-129 form" in December 2008, containing information she received from co-defendant Pochtaruk. Plea Hr'g Tr. at 46. Petitioner admitted she had received "directly conflicting information" regarding the alien workers and stated that the alien workers "all gave [her] different information from what Patricia Pochtaruk was telling [Petitioner] concerning where they were supposed to work, instructions concerning where they were supposed to appear, at what point they would be allowed to work." Id. at 47. The "areas of contradiction" were "important factual contradictions," and Petitioner developed "deep suspicions" as to the information she received from Pochtaruk. Id. Nonetheless, even after "it all started to come together" that Pochtaruk had given Petitioner false information so that

she could "us[e] these workers to go work for another company,"
Petitioner "filed [the] petition anyway," even though she "knew
that there was something wrong." Id. at 50-51.  Petitioner's
testimony establishes that she admittedly "subscribe[d] as true,
[a] false statement with respect to a material fact" in the
petition and "knowingly present[ed]" to the United States the
petition, "which contain[ed] [the] false statement." 18 U.S.C.
§ 1546(a).  Accordingly, because Petitioner cannot prove her
actual innocence to excuse her procedural default, and because
her claims, in any event, are without merit, Petitioner's § 2255
motion is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 Motion
is **DENIED**.  Petitioner has failed to demonstrate that she
received ineffective assistance by her counsel, and her actual
innocence claim fails to excuse the procedural default of her
prosecutorial misconduct claim, which is, in any event,
meritless.

Finding that Petitioner has not made a "substantial showing
of the denial of a constitutional right," a certificate of
appealability as to Petitioner's § 2255 motion is also **DENIED**.
R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28
U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322,
336-38 (2003).

28

Petitioner is **ADVISED** that, because a certificate of appealability is denied by this Court, she may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, she must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner and the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

_____
/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 30 , 2013